**IN THE COURT OF APPEALS OF IOWA**
No. 20-1223
Filed December 16, 2020

**IN THE INTEREST OF A.C.,**
**Minor Child,**

**A.W., Mother,**
　　　Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Stephen K. Allison of Stephen Allison Law, PLLC, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Jami J. Hagemeier of Hagemeier Law, P.L.C., Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and May and Schumacher, JJ.

**MAY, Judge.**

A mother appeals from the termination of her parental rights to her child, A.C., who was born in 2018.[1] She claims (1) the State failed to establish statutory grounds authorizing termination, (2) termination is not in A.C.'s best interest, and (3) A.C.'s placement with a relative should preclude termination. We affirm.

We review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted).

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We must determine: (1) whether grounds for termination have been established, (2) whether termination is in the child's best interest, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

The mother claims the State failed to satisfy the statutory grounds authorizing termination. The juvenile court found grounds for termination under Iowa Code section 232.116(1)(h) (2020). Paragraph (h) authorizes termination when:

---

[1] The juvenile court also terminated the father's parental rights, but he does not appeal.

>        (1) The child is three years of age or younger.
>        (2) The child has been adjudicated a child in need of
> assistance pursuant to section 232.96.
>        (3) The child has been removed from the physical custody of
> the child's parents for at least six months of the last twelve months,
> or for the last six consecutive months and any trial period at home
> has been less than thirty days.
>        (4) There is clear and convincing evidence that the child
> cannot be returned to the custody of the child's parents as provided
> in section 232.102 at the present time.

Iowa Code § 232.116(1)(h). The mother only challenges the fourth element. It is satisfied when the State establishes the child cannot be safely returned to the parent at the time of the termination hearing. *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020).

The State highlights the mother's continual struggle with substance-abuse and mental-health concerns. The record also shows concerns about domestic violence and criminality. The mother came to the attention of the Iowa Department of Human Services (DHS) when A.C. tested positive for THC at birth. DHS was involved with A.C. from August 2018 to April 2019.[2]

In October 2019, A.C. was removed from the mother's custody based on a report to DHS that the mother was abusing methamphetamine while caring for A.C. The child was placed with the maternal aunt. In November, the mother obtained a substance-abuse evaluation and was diagnosed with two substance-abuse related disorders. In December, A.C. had a hair-stat drug test that was positive for methamphetamine by environmental exposure. DHS found the mother committed

---

[2] The Warren County Juvenile Court closed A.C.'s child-in-need-of-assistance case in April 2019.

child abuse on three separate occasions due to her substance abuse while caring for A.C.

A few days after removal, the mother tested positive for methamphetamine. In January 2020, she pled guilty to theft in the fifth degree. In February, she again tested positive for methamphetamine. She admitted to relapsing in March. And from January to May, she repeatedly missed or refused drug tests. We presume these missed tests would have been positive for illegal substances. *See In re I.J.*, No. 20-0036, 2020 WL 1550702, at *2 (Iowa Ct. App. Apr. 1, 2020) ("We presume these missed drug tests would have resulted in positive tests."); *In re D.G.*, No. 20-0587, 2020 WL 4499773, at *4 (Iowa Ct. App. Aug. 5, 2020); *In re L.B.*, No. 17-1439, 2017 WL 6027747, at *2 (Iowa Ct. App. Nov. 22, 2017); *In re C.W.*, No. 14-1501, 2014 WL 5865351, at *2 (Iowa Ct. App. Nov. 13, 2014) ("She has missed several drug screens, which are thus presumed 'dirty,' i.e., they would have been positive for illegal substances.").

Despite various substance-abuse evaluations and treatment recommendations, the mother has failed to consistently engage in treatment. She has been discharged from substance-abuse and mental-health programs for lack of compliance. In May—roughly a month before the termination hearing—the mother entered an inpatient drug treatment program but then left the same day.

Additionally, DHS has noted concerns about domestic violence. On several occasions, the police were called to the mother's residence. The mother contemplated a no-contact order against the father. But she failed to complete the process. The mother has denied domestic violence is an issue and been inconsistent in meeting with her domestic-violence advocate. The juvenile court

found the mother "continues to have a toxic, domestic violence relationship with [the father] and [did] not want the court to know they were together."

Even if incidents of domestic violence were not a factor, though, we could not look past the mother's unresolved substance-abuse issues. We repeat once again, "[m]ethamphetamine is a scourge." *J.P.*, 2020 WL 110425, at *2; *In re K.L.*, No. 17-0346, 2017 WL 2465817, at *1 (Iowa Ct. App. June 7, 2017). "A parent's methamphetamine use, in itself, creates a dangerous environment for children." *J.P.*, 2020 WL 110425, at *2. Like the juvenile court, we are deeply concerned by the mother's methamphetamine use and her failure to engage in treatment.[3] *Cf. In re J.B.*, No. 18-0696, 2018 WL 4361058, at *3 (Iowa Ct. App. Sept. 12, 2018) (finding a child could not be returned to a parent when the parent had only been sober for three months). They prevented reunification. *See In re L.B.*, No. 18-1017, 2018 WL 3650370, at *1 (Iowa Ct. App. Aug. 1, 2018) (collecting cases affirming termination of a parent's parental rights when the parent has a history of substance abuse).

The mother suggests that her mental health suffered due to the COVID-19 pandemic and prompted her relapses. Because this hampered her progress, she claims she should get more time to work toward reunification.[4] We disagree. The

---

[3] In June 2020, a DHS social worker reported the mother "continues to have unresolved substance abuse concerns and has not fully engaged in treatment services." The termination hearing was held on June 17.

[4] The mother also claims she was not "afforded the same opportunity to address substance abuse, criminality, and domestic violence through DHS as the father." As a preliminary point, we reject the notion that identical services must be offered to different parents. The mother has not cited—and we have not found—any authority for such a requirement.

As for the general requirement of services though, we agree the State must establish it made reasonable efforts to return A.C. to the mother's home. *See* Iowa

mother's substance-abuse issues came to DHS's attention in August 2018 when A.C. was born positive for THC. That was about a year and a half before the COVID-19 pandemic began. The mother made little progress during that time. Then the mother had additional opportunities after the onset of COVID-19. For example, in May 2020—well into the pandemic—the mother went to inpatient treatment. But the treatment provider reported to DHS that the mother "left [their] treatment facility the same day she arrived" after telling staff "she just wasn't ready for residential treatment."

So we do not see the mother as "a parent whose hard work placed her on the threshold of reunification only to be thwarted by a once-in-a-lifetime event." *In re E.A.*, No. 20-0849, 2020 WL 4498164, at *2 (Iowa Ct. App. Aug. 5, 2020). Rather, she "is a parent who was given ample time to gain the skills necessary for reunification but simply failed to progress, pandemic or no pandemic."[5] *Id.*

---

Code § 232.102(7) (providing DHS must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). But, like the juvenile court, we believe reasonable efforts were made here. Moreover, parents must raise complaints regarding reasonable efforts *prior to* the termination hearing. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) ("[P]arents have a responsibility to object when they claim the nature or extent of services is inadequate."); *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("If, however, a parent is not satisfied with DHS'[s] response to a request for other services, the parent must come to the court and present this challenge."); *In re O.T.*, No. 18-0837, 2018 WL 3302167, at *2 (Iowa Ct. App. July 5, 2018) ("The failure to request different or additional . . . services in the juvenile court precludes [the parent's] challenge to the services on appeal."); *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (stating the parent has an "obligation to demand other, different, or additional services prior" to the termination hearing or the issue is considered waived for appeal). And we can find no instance in which the mother requested additional services and was not provided them. So the mother did not preserve any reasonable-efforts challenge.

[5] We also note the mother does not identify a "*specific*" improvement that would occur within six months. *See* Iowa Code § 232.104(2)(b) (emphasis added) (stating the court may defer termination for a period of six months if it is able to

Like the juvenile court, we find A.C. could not have been safely returned to the mother's care at the time of the termination hearing. This step in our analysis is satisfied. *See Z.P.*, 948 N.W.2d at 524 (affirming termination where the parent "was not prepared to assume a parenting role at the time of trial").

Our next step centers on the child's best interest. *See* Iowa Code § 232.116(2). We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

Like the juvenile court, we conclude termination is in the child's best interest. We do not question the mother's affection for the child. Even so, we cannot ignore her history of unaddressed substance abuse, mental-health issues, domestic violence, and criminality. Given her history, we are not confident she will be able to adequately meet the child's needs in the future. *See In re C.W.*, 554 N.W.2d 279, 283 (Iowa Ct. App. 1996). Meanwhile, A.C. is bonded to the maternal aunt as a caregiver. The second step in our analysis is complete.

---

"enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). Instead, she simply suggests additional time would help her achieve reunification. This generalization does not provide a sufficient basis to postpone termination. *See id*

Finally, we consider whether to apply a section 232.116(3) exception to termination. The mother mentions section 232.116(3) and emphasizes that "[t]he child has been placed in the custody of the maternal aunt." From this, we infer she is relying on section 232.116(3)(a). It authorizes the court to forgo termination if "[a] relative has legal custody of the child." Iowa Code § 232.116(3)(a). Here, the maternal aunt had legal custody of the child at the time of the termination hearing. But section 232.116(3) exceptions are permissive, not mandatory. *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). And the burden of establishing a section 232.116(3) exception rests with the parent contesting termination. *See A.S.*, 906 N.W.2d at 476. The mother has not presented a compelling argument to forgo termination. Rather, as noted above, termination is in A.C.'s best interest. So we decline to apply section 232.116(3)(a).

The juvenile court was correct in terminating the mother's parental rights.

**AFFIRMED.**